**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed Class***

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| LARRAINE ALFORD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STUDENT LOAN FINANCIAL ASSISTANCE LLC, a California corporation and JERRY YIRENKYI, individually and as officer, director, principal or manager of Student Loan Financial Assistance LLC,<br><br>Defendants. | Case No.: -<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

- 1-

CLASS ACTION COMPLAINT

Plaintiff Larraine Alford, on behalf of herself and all others similarly situated ("Plaintiff"), by and through her undersigned counsel, hereby sues Student Loan Financial Assistance LLC ("SLFA") and Jerry Yirenkyi ("Yirenkyi") (together referred to as "Defendants") and, upon information and belief and investigation of counsel, alleges as follows:

## I.   JURISDICTION AND VENUE

1.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because at least one member of the class, as defined below is a citizen of a different state than Defendants, there are more than 1,000 members of the class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

2.   This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this suit is brought under the laws of the United States, the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.*, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state common law and statutory claims as these state law claims are part of the same case or controversy as the federal statutory claim over which the Court has original jurisdiction.

3.   The Court has personal jurisdiction over Defendant SLFA because Defendant SLFA is a California corporation with its entity address at 1615 French St, Santa Ana California 92701 and regularly conducts business in California. Defendant Yirenkyi is the Chief Executive Officer of Defendant SLFA and resides in this District.

4.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury in this case substantially occurred in this District and Defendants' principal place of business and residence are in this District.

## II.   PARTIES

5.   Plaintiff Larraine Alford ("Alford" or "Plaintiff") is a resident of Sacramento, California.

- 1-

6.     Defendant SLFA is a California corporation with a status of "FTB Suspended".   SLFA is located at 1615 French St, Santa Ana California 92701 and also a second address at 2101 Business Center Drive, Suite 320, Irvine, California 92612.  SLFA also maintains a mailing address at 15721 Williams Street, Tustin, California 92780, and regularly conducts business in California

7.     Defendant Jerry Yirenkyi is a resident of Irvine, California, and the CEO of SLFA.  Yirenkyi is SLFA's highest ranking officer, and he is solely responsible for all SLFA operations and is the registered agent for SLFA.

8.     At all times material to this Complaint, acting alone or in concert with others, Defendants have advertised, market, distributed, or sold student loan debt relief services to consumers throughout the United States.

### III.     FACTUAL ALLEGATIONS

9.     Preying on widespread anxiety and confusion around student loan debt, Defendants misrepresent the cost and features of federal loan repayment programs in order to extract fees from struggling borrowers. Defendants work to gain customers' trust by misleading statements making Defendants appear to work for or affiliated with the U.S. Department of Education ("ED"), the government or the customers' loan servicer.  Defendants then purport to provide debt relief services to consumers with student loan debt, falsely claiming that they can save consumers substantial funds by getting the consumers into loan repayment plans that will substantially reduce the consumers' monthly payment and/or completely eliminate their debt.  Defendants also purport to have in-house lawyers who can provide expert debt relief services.  Defendants charge upfront fees of approximately $1,000 for the service of consolidating a consumer's loan and placing the consumer into a loan program.  These fees are not applied to the loan and in many instances the free service of consolidating a loan through the ED does not transpire.

10.     Importantly consumers can apply for loan repayment and forgiveness programs through the ED or their student loan servicers at no cost.  These programs

(income-driven repayment or "IDR") do not require the assistance of a third party or the payment of any fees.

11.   IDR programs allow eligible borrowers to limit their monthly payment based on a percentage of their discretionary monthly income.  To remain in an IDR program, borrowers must recertify their income and family size annually.  Obtaining forgiveness through IDR programs requires a minimum of 20 to 25 years of qualifying payments.  No loans have been forgiven yet under any of the IDR programs.

12.   The ED and state government agencies also administer a limited number of student loan forgiveness and discharge programs.  Most consumers, however, are not eligible for these programs because of strict eligibility requirements.  For example, Public Service Loan Forgiveness applies to employees of governmental units or non-profits organization who make timely monthly payments for a period of ten years while employed in the public or non-profit sector.

13.   The ED also allows consumers with multiple federal loans to consolidate them into one "Direct Consolidation Loan" with a fixed interest rate and single monthly payment.  ED does not charge for consolidation and offers a dedicated helpful and webpage to assist borrowers with the process.

14.   Defendants mislead consumers on hard sales calls regarding a consumer's options and make the consumer believe the process of consolidating themselves and entering an IDR program is excessively time consuming and the consumer will not be placed into the best loan program.  Defendants also mislead consumers that a team of attorneys are available to assist them, when under information and belief, no such licensed attorneys are employed by Defendants.

15.   Defendants' representations that they can procure a permanent reduction in consumers' monthly payments are false or unsubstantiated because none of ED's IDR's programs guarantee consumers a fixed, reduced monthly payment for more than one year.  Under ED's IDR programs, monthly payments

fluctuate based on consumers' income each year, which consumers must recertify annually, and the amount forgiven depends on what remains unpaid at the end of the repayment period.  In many cases, consumers' income will rise over the years-long repayment period, and as consumers' income rises, so will their monthly payment each year.  As a result, the amount that would be forgiven at the end of the repayment term typically would be less than Defendants have promised.

16.     In order to for Defendants to determine if the consumer is eligible for "their" program (many times the consumer believes it is the Defendants who are reducing their loan payment or changing the terms instead of a middleman), Defendants ask the consumer to provide his or her private FSA password then change the consumers' FSA password in order to log in and to view the consumers' private loan information.

17.     After informing consumers that they are eligible, or "preapproved," for a "forgiveness" program and Defendants persuade consumers to work with Defendants to purportedly *lower or eliminate their student loan payments*, Defendants' agents tell consumers that to enroll in the federal program, consumers are required pay monthly fees for enrollment.  These add up to approximately $1,000.  Yet none of the ED's programs require an advance fee or any fee to apply.  Consumers can apply for ED's programs on their own, at no cost.  Defendants' agents obtain the consumers' bank, debit or other payment information during the telemarketing call, and begin collecting the fee installment from consumers immediately.  These fees area collected before enrolling the consumer in any federal program.

18.     In addition to charging an advance fee, Defendants also charge consumers a monthly fee.  Defendants falsely represent that this amount will be the consumer's new, reduced monthly loan payment.  Defendants collect and retain these monthly fees, however they do not apply the monthly fees to pay down consumers' loans, as consumers are led to believe.

19.    Defendants also misrepresent family size and employment on the consumers' application so that it appears the consumer has a lower monthly rate.

20.    If consumers are initially unwilling to work with Defendants, Defendants often attempt to convince them to do so by telling consumers that the federal programs will, or likely will, be eliminated soon.

21.    Consumers have paid Defendants hundreds of dollars in monthly fees they cannot afford before discovering that none of those fees were applied to pay down their student loan.

22.    Consumers often discover that they have been scammed only after talking to their actual loan servicer and realizing that Defendants charged them hundreds of dollars to enroll in a program that they could have enrolled in by themselves, for free.

23.    Defendants even take actions that may be detrimental to consumers' ability to repay their loans.  For example, Defendants routinely consolidate consumers' loans even though under certain ED forgiveness programs, this could cause borrowers to lose credit for payments already made and thereby delay their ability to obtain forgiveness, often telling consumers they are not yet in the forgiveness program until they enroll with them.

24.    Defendants also refuse to provide refunds to consumers who request them after learning that Defendants had scammed them.

25.    The Federal Student Aid website warns consumers regarding these exact student loan scams; however, the deception of the agent makes it difficult for the anxious consumer to realize the information they are receiving is not from the ED.  *See* https://studentaid.gov/articles/student-loan-scams/ (last visited September 8, 2021).

26.    The FTC has already filed complaints against numerous debt relief companies who have scammed consumers in the very same manner Defendants have scammed Plaintiff and putative Class members.

CLASS ACTION COMPLAINT

27.    In the complaints, the FTC, like Plaintiff and putative Class membership here, "alleged that the defendants' companies bilked millions from people trying to lower or eliminate their student loan debt. The defendants marketed on social media platforms, including Facebook. According to the FTC's complaint, they misrepresented that they were affiliated with the U.S. Department of Education or the loan servicers, and falsely claimed that consumers who paid an upfront fee of up to $1,000 were qualified or approved for permanently reduced monthly payments or loan forgiveness. In fact, the complaint alleged, the defendants had no affiliation with the U.S. Department of Education and operated a service that provided no relief." *See* https://www.ftc.gov/news-events/press-releases/2019/09/ftc-sends-more-54-million-people-who-paid-worthless-student-loan#:~:text=The%20Federal%20Trade%20Commission%20is%20sending%20more%20than,money%20under%20a%202018%20settlement%20with%20the%20FTC (last visited September 8, 2021).

28.    The practices of Defendants violate California's False Advertising Law, Cal. Civ. Code §§ 17500 and § 17535, *et seq.* ("FAL"), California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), California's Unfair Competition Law ("UCL"), Business & Professional Code, §§ 17200, *et seq.,* Cal. Civ. Code §§ 1709-1710, Cal. Bus. & Prof. Code §§ 17600 *et seq.* and 17535, Cal. Penal Code § 496, and the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*

29.    As a direct result of Defendants' conduct, Plaintiffs and members of the proposed class suffered economic injury in the loss of monies paid to Defendants for a service when never transpired to pay down the consumers' loan or benefit the consumer.

30.    Plaintiff, on behalf of herself and members of the class she seeks to represent, seeks restitution, declaratory, injunctive, and other equitable relief, statutory damages, actual and treble damages, reasonable attorneys' fees and costs, and interest, as set forth below.

CLASS ACTION COMPLAINT

## V.   PLAINTIFF'S INDIVIDUAL ALLEGATIONS

31.   Plaintiff Larraine Alford has student loan debt of approximately $70,000.

32.   In or around 2019, Plaintiff was contacted by Defendants on her cellular phone.

33.   Defendants attempted Plaintiff's cellular phone several times and left messages regarding student loan debt relief.

34.   After several phone calls, Plaintiff called the number provided by Defendants to discuss Defendants' services.

35.   From the phone messages and conversation with Defendants' agents, Plaintiff believed she was speaking with her loan servicer FedLoan Servicing.

36.   Plaintiff was never aware she was speaking with a third-party company who had no relations with the ED, the government, or her loan servicer.

37.   During the conversation with Defendants' agents, Plaintiff was asked to provide her private FSA ID to determine if she was eligible for debt forgiveness.

38.   Plaintiff, believing she was speaking with her loan servicer, provided her FSA ID and Defendants proceeded to change her password.

39.   Defendants thereafter "accepted" Plaintiff into the debt relief program and charged Plaintiff $198.00 for three months which was directly auto debited from her bank account from the name www.slfa.us.

40.   Defendants' agents advised Plaintiff that after making the payments her student loan would be forgiven.

41.   After Plaintiff's account was charged $198.00 for the three months (May 9. 2019, June 4, 2019, and July 2, 2019), Plaintiff was no longer able to reach Defendants.

42.   Plaintiff thereafter contacted FedLoan Servicing, her loan servicer, who informed her that none the payment she had made to "SLFA" went towards her student loan and that she was scammed by the company.

- 7-

43.     Due to Defendants deceitful representations, Plaintiff was not aware that her payment to "www.slfa.us" were not being paid towards her student loan or student loan forgiveness.  If Plaintiff had known that the money transferred from her bank account to Defendants would not go towards her student loan or loan forgiveness, she would have never provided her banking information to Defendants which resulted in the subsequent charges.

44.     Plaintiff has therefore been scammed at least $594 dollars, has missed payments to her student loans that she would have otherwise made, and has received no benefit.

45.     Plaintiff is not the only one to complain of Defendants' deceptive actions.   In fact, The Better Business Bureau boasts various compliant from consumers in similar situations to Plaintiff.  Below are only several of the hundreds of complaints against Defendants online:

- April 14, 2021:  STUDENT LOAN FINANCIAL ASSISTANCE is a SCAM they told me that if i made payments for 3 months after i finished the payments my loan would be forgiven after they took my money they never responded to my calls or emails now they keep calling me saying they need more money or i will be out of "The program" total BS do NOT fall for it scam scam scam i will definitely have to talk to a lawyer this should not happen to hard working people.

- April 9, 2021:  On March 27, 2020 this company called me to help with my student loans. They have been charging me $77 and only filing forbearance on my loans. I found out several months later and I am trying to contact them to cancel my contract with them, possibly get my money back and the number is out of service and I have no way to contact them. I've contacted the bank to stop payments but I want to speak with someone in this "company" directly to be done with them once and for all.

- January 31, 2021:  The company, SLFA, Student **** Financial Services, contacted me on 6/3/2020 to help me find A LOAN servicer to consolidate my student loan. The company has been electronically withdrawing a fee from my checking account from June 2020 to January 2020. When the company first contacted me, the company pledge to work on my behalf to find a take loan company to reduce my student loan payment. I was under the impression that the money that was being taken out was going towards repaying my student loan during the federally mandated deferment period due to COVID-19. When I further investigated, I found out that my loan was sold by Great ********** Services to Navient Student **** Services ($349.63). Navient stated that my loan repayment will start up again in October 8, 2021 in an amount that was twice the amount that SLFA was taking out ($174.00). I originally thought that SLFA was my student loan servicer, but in fact, SLFA was taking the monthly payment for their services. I didnt receive a copy of the contract until the company sent it to me on Wednesday, January 20, 2021 at 6:48 P.M. When I reviewed the contract, I realize that the client name was incorrect, and the client signature does not match my signature. It has my husbands name instead of my name. SLFA has not done anything in my best interest to help me secure a loan company that could help me with lower repayment plan. I would like to recoup my payment to SLFA from June 3, 2020 to January 6,2021 in the amount of $870.00,

- January 18, 2021:  About a year ago, I was called by a representative from this company who left a message on my voicemail stating that I may qualify for Student Loan forgiveness. I fell into some hard times and was jobless for a while and my Student Loans ended up defaulting. I got myself into a new reliable job and come income tax time, I found

CLASS ACTION COMPLAINT

out I wasn't going to see a ***** of my returns until I resolved my Student Loans issue. So I called them back to see what they could do for me. The representative that I spoke to, led me to believe that based on my income that I qualified for their Student Loan Forgiveness program. So I set everything up, started making payments to them under the assumption it was going toward relieving that debt. The representative further misled me into believing that after making payments to them for about 3 months, my name would be taken off the *** list to have my returns withheld. A year later, my name is still on that list and my student loans are still in default. After trying to call them several times by a number that doesn't seem to work anymore and sending an e-mail with no correspondence, I decided to look through my e-mails and found a copy of documentation that I signed. According to the signed contract, the money they have been taking out of my bank account is to pay for their "services" of finding me a new loan to consolidate/refinance my student loans and is not going toward my debt as I was led to believe. So I paid this company over $1200 for a service for which I have yet to see any benefits. I am FURIOUS! This company seems to border on a scam based on the shady practices of their representatives misleading prospective clients.

- December 29, 2020:  My complaint is the company Student Loan Financial Assistance. I have been calling them but unable to reach anyone regarding my case with them. Ive sent emails to them and email was returned to me no such user at the email address. ********************* have been drafting money out my checking account every month and I would like for them to stop drafting payments and refund me all of my money back because they are a scam. They have not put any of my payments towards my student loan and

1    has not service my case satisfaction as they promised.

2    • September 3, 2020:  This company, or so called is a total scam and I am
3      going to go after you. They topk $1200 from me and none of my
4      payments went towards ANY of my student loans. I'm contacting the
5      attorney general and will be trying to get this fake company taken down.
6      They don't consolidate and of your student loan debt and ARE NOT
7      associated with the Department of Education.

8    • April 2, 2020:  Trusted them to get me set up on a lower payment plan.
9      They said that they would work with the department of education.
10     Started in November my service had sent me a bill for over $500.
11     Which is why I reached out to them. After I paid $391, 3 times total
12     $1173 I was unable to reach them for several weeks. Received another
13     bill from my servicer for over $500. Closed my bank account, because
14     even my bank thought it was a scam since they also could not reach
15     them. did my own application with department of education. When I
16     was finally able to get ahold of them I got told different things from
17     several different people. They refused to give me my $ back since I had
18     to do my application and do my own work I explained that I felt like
19     their service was a lie. They refused to give me any money back. Bank
20     did a charge back and was about to get one of my $391 payments back.
21     Still out $782 for them basically doing nothing in the end. Very
22     disappointed and feel like this is all a scam and a lie. They did do the
23     follow through and did not finish what the money was supposed to go
24     towards in the first place. Have probably 10 different numbers provided
25     to me to call and over half say no longer in service. Just want the rest
26     of my refund. They dropped the ball, didnt finalize anything. Didn't get
27     what I had agreed to accomplished. When I couldnt reach them, they
28     stated that they are also effected with Covid 19, which I understand but

CLASS ACTION COMPLAINT

no follow through? Website was never update. Had one of them say that our website isn't always reliable? Never disappointed, I did try to work with them, but they said they did the work. I dont see how they did when my payment went back to what it was before it I asked for their service.

- March 3, 2020:  I was advised that i was in a program and they already took my money for my account. I contacted Department of Education and they told me this company was misleading me because loan forgiveness can only be done by Department of Education and it does not take the 6 months to get consolidated and to get everything squared away. I keep trying to call and only get people who do not speak good english or a voice machine. I would like to get my money back because i am not paying anything toward my actual loans. I am working with the Department of Education for free.

- February 14, 2020:  On 10/16/19 Student Loan Financial Assistance LLC (SLFA) left me a voicemail, they had important info about my student loans and I must call back. Worried I called and was told they could consolidate my loans not under loan forgiveness & lower my monthly payment w/o loss of any loan forgiveness time. They represented that they were affiliated with the Dept. of Ed (DOE), which I believed as they had access to all my records. I would have to pay $202 a month for 4 moths for DOE to process the consolidation. They pressured me to agree to terms but the pw they gave me to their portal did not work so I don't believe I ever agreed to anything. I paid them $202 a month, thought I was paying it to DOE, no choice if I wanted to consolidate. I sent them requested documents, on 10/30/19 got verification of receipt. They put me in forebearance for 2 months to give DOE time to process paperwork. In 12/19 I called re status. No

CLASS ACTION COMPLAINT

news, DOE was still processing paperwork. This time they said I could consolidate all my loans without losing forgiveness time. They put me on another 2 months of forbearance, concerning but they said it would not matter. On 12/31/19 and on 1/9/20 Helen G***** of SLFA emailed me asking for docs I had already submitted. In 1/20 I got a letter from DOE cautioning that if I consolidated all my loans I would lose all my forgiveness time. I called SLFA. Nelly promised to correct my account, remove loans under loan forgiveness and call me on 2/10 with an update. She never called. I asked her to verify affiliation with DOE and she said they were a 3rd party private company. I'd paid them $606 by then. On 2/13/20 I spoke with Terry from DOE who said my account was still in review as they only received paperwork from SLFA in 1/20. He said SLFA moved me from the standard income-based repayment plan to another plan and I'd have to pay $88 to move back.

- February 4, 2020:  I received a call from SLFA stating that I qualified for financial assistance with my student loans and I would be eligible to pay $0.00 a month as long as I made three payments of $175.00 for 3 months. After a few months, I received a bill from FedLoan for $358.00. I called and that's when I found out I had been scammed by this third party buisness. They said I had 4 kids (I have none) and I did not have a job. I have been employed full time all of my life. The money I was paying this 3rd party did not go towards my student loan debt.

*See* https://www.bbb.org/us/ca/irvine/profile/student-loan-services/student-loan-financial-assistance-1126-1000060943/customer-reviews (last visited September 8, 2021).

## IV.   CLASS ALLEGATIONS

46.    Plaintiff brings this class action lawsuit individually and on behalf of the proposed class under Rule 23 of the Federal Rules of Civil Procedure.

**Nationwide Class**: All persons within the United States, within the applicable limitations period, who used Defendants' student debt relief assistance services.

**Nationwide EFTA Subclass**: All persons with the United States whose debit card and/or bank account was charged fees by Defendants during the applicable limitations period.

**California Subclass**: All persons within California, within the applicable limitations period, who used Defendants' student debt relief assistance services.

47.     Excluded from the class are the following individuals: officers and directors of Defendants and its parents, subsidiaries, affiliates, and any entity in which Defendants have a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

48.     Plaintiff reserves the right to modify or amend the definitions of the proposed class before the Court determines whether certification is appropriate.

49.     <u>Numerosity</u>. The members of the Class are so numerous that a joinder of all members is impracticable.  While the exact number of class members is unknown to Plaintiff at this time, Plaintiff believes the class numbers in the thousands, if not more.

50.     <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Class members because, among other things, Plaintiff sustained similar injuries to that of class members as a result of Defendants' uniform wrongful conduct, and their legal claims all arise from the same events and wrongful conduct by Defendants.

51.     <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff's interests do not conflict with the interests of the Class members and Plaintiff has retained counsel experienced in complex class action cases to prosecute this case on behalf of the class.

52.    <u>Commonality</u>. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual members of the class, including the following:

i.      Whether Defendants misrepresent that they are affiliated with the government, government loan programs, the Department of Education, or consumers' loan servicers;

ii.     Whether Defendants misrepresent that consumers who purchase Defendants' debt relief services generally will have their monthly payment reduced or their loan balances forgiven in whole or in part;

iii.    Whether Defendants misrepresent to consumers that a government loan repayment or loan forgiveness program requires consumers to pay a fee to enroll;

iv.     Whether Defendants misrepresent to consumers that some or all of consumers' monthly payment to Defendants will be applied toward consumers' student loans;

v.      Whether Defendants transfer money from consumers bank accounts to Defendants and provide no services to the consumer;

vi.     Whether Defendants receives fees or consideration for debt relief services prior to renegotiating, settling or reducing a debt;

vii.    Whether Plaintiff and the Class members are entitled to restitution or disgorgement of money paid;

viii.   Whether Plaintiffs and the class members are entitled to restitution pursuant to the UCL;

ix.     Whether Defendants' uniform acts and practices violates EFTA;

x.      Whether Defendants' uniform acts and practices violates the CLRA;

xi.     Whether, as a result of Defendants' conduct, Plaintiff and the Class members suffered injury; and

xii.    The nature of the relief, including equitable relief, to which Plaintiff

sand class Members are entitled.

53.   Ascertainability. Class members can easily be identified by an examination and analysis of the business records maintained by Defendants, among other records within Defendants' possession, custody, or control.

54.   Predominance. The common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' conduct.

55.   Superiority. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since a joinder of all members is impracticable.  Furthermore, as damages suffered by Class members may be relatively small, the expense and burden of individual litigation make it impossible for class members to individually redress the wrongs done to them. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

56.   Accordingly, this class action is properly brought and should be maintained as a class action because questions of law or fact common to Class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

57.   This class action is also properly brought and should be maintained as a class action because Plaintiff seek injunctive relief and declaratory relief on behalf of the Class members on grounds generally applicable to the proposed class. Certification is appropriate because Defendants have acted or refused to act in a

manner that applies generally to the proposed class, making final declaratory or injunctive relief appropriate.

**FIRST CAUSE OF ACTION**

**Violation of the California's Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

***(On Behalf of Plaintiff and the Nationwide Class)***

58.    Plaintiff re-alleges and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

59.    Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices…"

"Unfair" Prong

60.    The UCL prohibits "unfair competition," which is broadly defined as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code §17200.

61.    Defendants' business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

62.    Defendants have made material misrepresentations and omissions, both directly and indirectly, related to their purported student debt relief services, including but not limited to, making statements that Defendants work for or are affiliated with the ED; making statements to consumers that they will substantially reduce or eliminate their debt; charging fees for under the guise said fees are being used to pay down debt, claiming to have attorneys work in house for them, and

changing consumers' passwords so they no longer have access to their accounts.

63.   As such, Defendants have engaged in unfair or deceptive acts in violation of the UCL.

64.   Defendants' unfair acts allege herein deceived and misled consumers. Defendants have taken advantage of the lack of knowledge, ability, experience, or capacity of consumers to the detriment of those consumers.

65.   Defendants' conduct also injures legitimate student loan assistance providers that do not engage in the same unfair and unethical behavior.

66.   Defendants' violations were, and are, willful, deceptive, unfair, and unconscionable. Defendants is aware of the violations but have failed to adequately and affirmatively take steps to cure the misconduct.

"Fraudulent" Prong

67.   Under the "fraudulent" prong, a business practice is prohibited if it is likely to mislead or deceive a reasonable consumer or, where the business practice is aimed at a particularly susceptible audience, a reasonable member of that target audience. *See Lavie v. Proctor & Gamble Co.,* 105 Cal.App.4th 496, 506-07 (2003).

68.   Defendants' conduct with respect to its purported student loan debt relief as described herein violates the "fraudulent prong" of the UCL.  Such practices are likely to deceive members of the public.  Specifically, Defendants made false statements and promises about what it could do for consumers, and accepted sums of money from consumers under the fraudulent representation said money would be used to pay down student loan debt, among other actions discussed in this complaint.

69.   The UCL authorizes a civil enforcement action against "[a]ny person who engages, has engaged, or proposes to engage in unfair competition." Bus. & Prof. Code §17203.  "[P]erson" includes "natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." *Id.* §17201.

70.   Defendants intentionally mislead and deceive consumers into believing

they are entering into a service with the government, a government loan program, the ED, the consumers' loan servicers or a company affiliated with the government, a government loan program, the ED, the consumers' loan servicers

71.   Plaintiffs and Class members acted reasonably when they paid money for Defendants' purported service, which they believed to pay down or forgiven their student loan.

72.   Plaintiffs and Class members lost money or property as a result of Defendant's UCL violations because they would not have subscribed to Defendants' purported services absent Defendants' representations and omission advising that they are a third-party company and entering into consolidation and income-based loan programs are free through the ED.

"Unlawful" Prong

73.   Defendants' business practices, described herein, violated the "unlawful" prong of the UCL by violating the Consumers Legal Remedies Act and the Electronic Funds Transfer Act.

74.   Such conduct is ongoing and continues to date.

75.   Defendants' conduct further violates other applicable California regulations as alleged herein.

76.   Plaintiffs and Class members are likely to continue to be damaged by Defendants' deceptive practices thus injunctive relief enjoining Defendants' deceptive practices is proper.

77.   Defendant's practices are therefore unfair, unlawful, and fraudulent under Section 17200 *et. seq.* of the California Civil Code.

78.   In accordance with California Business & Professions Code §17203, Plaintiff seek an order: (1) enjoining Defendants from continuing to conduct business through its fraudulent conduct; and (2) requiring Defendants to conduct truthful and transparent marketing of their services.

79.   As a result of Defendants' conduct, Plaintiff seeks restitution,

disgorgement, and injunctive under California Business & Professions Code §17203

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation

### Cal. Civ. Code §§ 1709-1710

*(On Behalf of Plaintiff and the Nationwide Class)*

80.   Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

81.   Defendants' practice of misleading and deceiving consumers into believing they are entering into a service with the government, a government loan program, the ED, the consumers' loan servicers or a company affiliated with the government, a government loan program, the ED, the consumers' loan servicers concern material facts that influenced Plaintiff and the Class members' to pay for Defendants' purported student loan debt relief services.

82.   Also material is Defendants' practice of misleading and deceiving consumers into paying upfront fees to pay down or cancel their student loan, but the fees only go into Defendants' pockets.

83.   At the time Defendants made the misrepresentations, Defendants knew or should have known that the misrepresentations were false, or Defendants made the misrepresentations without knowledge of their truth or veracity.

84.   Plaintiff and the Class members reasonably, justifiably, and detrimentally relied on the misrepresentations and, as a proximate result thereof, have and will continue to suffer damages.

## THRID CAUSE OF ACTION

### Unjust Enrichment

*(On Behalf of Plaintiff and the Nationwide Class)*

85.   Plaintiff re-alleges and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

86.   By misleading and deceiving consumers into believing they are

entering into a service with the government, a government loan program, the ED, the consumers' loan servicers or a company affiliated with the government, a government loan program, the ED, or the consumers' loan servicers and thereafter paying for services which did not transpire into loan forgiveness or the paying down of consumers' student loan, Defendants have been unjustly enriched at the expense of Plaintiff and Class members. It would be inequitable, unjust, and unconscionable for Defendants to retain the profit it received by the payments.

87. Plaintiffs seek disgorgement of all proceeds, profits, benefits, and other compensation obtained by Defendants from their improper and unlawful fee charges, as well as all other appropriate relief permitted by law of unjust enrichment, including reasonable attorneys' fees and costs of suit.

## FOURTH CAUSE OF ACTION

### Violation of the California's Consumers Legal Remedies Act

### Cal. Bus. & Prof. Code §§ 1750, *et seq.*

### *(On Behalf of Plaintiff and the California Subclass for Injunctive Relief only)*

88. Plaintiff re-alleges and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

89. Cal. Civ. Code § 1770(a)(14) specifically prohibits companies from "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

90. Defendants violated and continue to violate the CLRA by representing that the Plaintiff and members of the Class are entering into a service with the government, a government loan program, the ED, the consumers' loan servicers or a company affiliated with the government, a government loan program, the ED, or the consumers' loan servicers and thereafter paying for services which did not transpire into loan forgiveness or the paying down of consumers' student loan. Defendants do not have the legal right to charge these upfront fees without renegotiating, settling, reducing or otherwise altering the terms of a consumers

student loan.

91.    Plaintiff and members Class reasonably relied upon Defendants' material misrepresentations and/or omissions to their detriment.  Had Defendants not deceived and misrepresented their identity and purported student debt relief services, Plaintiff and members of the Class would have never provided their bank information and allowed for Defendants to transfer funds from their accounts.  As a direct and proximate result of Defendants' conduct, Plaintiff and members of the Class were damaged.

92.    On September 14, 2021, prior to filing this action, Plaintiff sent a CLRA notice letter to Defendants which complies with California Civil Code § 1782(a).  Plaintiff sent Defendants, individually and on behalf of the proposed class, a letter via Certified Mail, advising Defendants that it is in violation of the CLRA and demanding that it cease and desist from such violations, take appropriate corrective action, and make full restitution by refunding monies received therefrom.

93.    Plaintiff, on behalf of herself and the putative Class, requests injunctive relief as permitted by Civil Code §§ 1780, and any other relief deemed appropriate and proper by the Court under California Civil Code § 1780.  Such injunctive relief includes requiring Defendants to (i) cease making representations that lead a reasonable consumer to believe Defendants are or are affiliated with the government, a government loan program, the Department of Education, the consumers' loan servicers; (ii) cease taking fees for services not performed; (iii) cease taking upfront fees for purported debt relief services before renegotiating, settling, reducing or otherwise altering the terms of the loan; and (iv) cease representing to consumers that they are not entitled to refunds of moneys paid to Defendants for purported debt relief services.

94.    Wherefore, Plaintiff seek injunctive relief for Defendants' violations of the CLRA. If Defendants fail to take the corrective action detailed in Plaintiff's CLRA letter within thirty days of the date of the letter, then Plaintiff will seek leave

to amend their complaint to add a claim for damages under the CLRA.

95.    In accordance with Cal. Civ. Code § 1780(d), Plaintiff's CLRA venue declaration is attached hereto as Exhibit A.

## FIFTH CAUSE OF ACTION

### False Advertising

### Cal. Bus. & Prof. Code §§ 17500 *et seq.* and 17535

### *(On Behalf of Plaintiff and the Nationwide Class)*

96.    Plaintiff re-allege and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

97.    Defendants has made material misrepresentations and/or omissions to Plaintiff and consumers detriment and Plaintiff and member of the Class have paid Defendants substantial fees which have not paid down their student loan, changed the terms, or resulted in loan forgiveness.  Had Defendants not deceived and misrepresented their identity and purported student debt relief services, Plaintiff and members of the Class would have never provided their bank information and allowed for Defendants to transfer funds from their accounts.  As a result of Defendants' conduct, Plaintiff and members of the Class were damaged.

98.    Defendants violated and continue to violate Section 17500 by representing that the Plaintiff and members of the Class are entering into a service with the government, a government loan program, the ED, the consumers' loan servicers or a company affiliated with the government, a government loan program, the ED, or the consumers' loan servicers and thereafter paying for services which did not transpire into loan forgiveness or the paying down of consumers' student loan. Defendants also misrepresent unnecessary fees to be charged for consolidation and entering into various loan programs and also misrepresent the ease in entering these programs without a third party middleman. Defendants knew the statements they made were untrue or misleading and that customer were deceived by their statements.

99.     Defendants also improperly collect fees without renegotiating, settling, reducing or otherwise altering the terms of a consumers student loan.

100.    Plaintiff and Class members have suffered injury in fact and lost money or property as a result of Defendants' unlawful misrepresentations.

101.    Pursuant to § 17535, Plaintiffs and class members are entitled to restitution of all amounts that Defendants charged to Plaintiffs' and class members' credit cards, debit card, or thirty-party payment accounts.

102.    Unless enjoined and restrained by this Court, Defendants will continue the unlawful conduct alleged herein. Pursuant to § 17535, Plaintiffs seek a public injunction for the benefit of the general public of the State of California.

### SIXTH CAUSE OF ACTION

### Theft

### Cal. Penal Code § 496

### *(On Behalf of Plaintiff and the Nationwide Class)*

103.    Plaintiff re-allege and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

104.    Penal Code § 496 states in pertinent part:

"(a) Every person who . . . receives any property ... that has been obtained in any manner constituting theft . . . knowing the property to be so . . . obtained, or who withholds, or aids in, withholding any property from the owner, knowing the property to be so ... obtained, shall be punished [description of criminal punishments].

…

(c) Any person who has been injured by a violation of subdivision ... may bring an action for three times the amount of actual damages ... costs of suit, and reasonable attorney's fees."

105.    Theft, as described in Cal. Penal Code § 484, subdivision (a) includes the following:

"Every person … who shall knowingly and designedly, by any false of fraudulent representation or pretense, defraud any other person of money . . . is guilty of theft."

106.   Plaintiff alleges that her property and the property of members of the Class was obtained by Defendants in a manner constituting theft or was withheld from Plaintiff and the Class by Defendants with the knowledge that the property had been obtained in a manner constituting theft.

107.   Defendants created, implemented and/or participating in a systematic and uniform scheme to obtain money by unlawful means through a series of unlawful acts based upon false representations or pretenses as follows:

(a) Defendants misrepresent that they are affiliated with the government, government loan programs, the Department of Education, or consumers' loan servicers;

(b) Defendants misrepresent information while filing out consolidation and income based repayment options, such as family size and employment;

(c) Defendants misrepresent that consumers who purchase Defendants' debt relief services generally will have their monthly payment reduced or their loan balances forgiven in whole or in part;

(d) Defendants misrepresent to consumers that a government loan repayment or loan forgiveness program requires consumers to pay a fee to enroll;

(e) Defendants misrepresent to consumers that some or all of consumers' monthly payment to Defendants will be applied toward consumers' student loans;

(f) Defendants transfer money from consumers bank accounts to Defendants and provide no services to the consumer;

(g) Defendants receive fees or consideration for debt relief services prior to renegotiating, settling or reducing a debt;

108.   As a result of Defendants' unlawful conduct, Plaintiff and the Class

members were damaged by their loss of money obtained by Defendants in furtherance of a scheme and artifice to obtain money based upon false representations and pretenses.

## SEVENTH CAUSE OF ACTION

### Conversion

### *(On Behalf of Plaintiff and the Nationwide Class)*

109.   Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

110.   Defendants has enrolled consumers, including Plaintiff and Class members in auto-debit payment for fees for services which were misrepresented including:

(a) Defendants misrepresent that they are affiliated with the government, government loan programs, the Department of Education, or consumers' loan servicers;

(b) Defendants misrepresent information while filing out consolidation and income based repayment options, such as family size and employment;

(c) Defendants misrepresent that consumers who purchase Defendants' debt relief services generally will have their monthly payment reduced or their loan balances forgiven in whole or in part;

(d) Defendants misrepresent to consumers that a government loan repayment or loan forgiveness program requires consumers to pay a fee to enroll;

(e) Defendants misrepresent to consumers that some or all of consumers' monthly payment to Defendants will be applied toward consumers' student loans;

(f) Defendants transfer money from consumers bank accounts to Defendants and provide no services to the consumer;

(g) Defendants receive fees or consideration for debt relief services prior to renegotiating, settling or reducing a debt;

111.   Plaintiff and Class members have suffered injury in fact and lost money or property as a result of Defendants' misrepresentations.

112.   Pursuant to § 17535, Defendants' collection and retention of money resulted in the wrongful exercise of dominion over property belonging to Plaintiffs and the Class and Plaintiffs and class members are entitled to restitution of all amounts that Defendants charged to Plaintiffs and class members' credit cards, debit card, or thirty-party payment accounts.

## EIGHTH CAUSE OF ACTION

### Violation of the Electronic Funds Transfer Act

### 15 U.S.C. § 1693, *et seq.*

### (On Behalf of Plaintiff and the Nationwide EFTA Class)

113.   Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

114.   The EFTA provides a basic framework establishing the rights, liabilities, and responsibilities of participants in an electronic fund transfer system. 15 U.S.C. §§ 1693 *et seq*. The "primary objective" of the EFTA "is the provision of individual consumer rights." *Id*. § 1693(b).

115.   Any waiver of EFTA rights is void. "No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter." 15 U.S.C. § 1693l.

116.   Defendants transfers of money from the bank accounts of Plaintiff and members of the Nationwide EFTA Class, via their debit cards or bank accounts, as alleged herein, are "electronic fund transfers" within the meaning of the EFTA and the EFTA's implementing regulations, known as Regulation E and codified at 12 C.F.R. §§ 205 *et seq*. An "electronic fund transfer" means "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument,

which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(7). The term is expressly defined to include "[t]ransfers resulting from debit card transactions, whether or not initiated through an electronic terminal." 12 C.F.R. § 205.3(b)(v).

117.   The EFTA defines the term "preauthorized electronic transfer" as "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(9). The Official Staff Interpretation of Regulation E describes a "preauthorized electronic transfer" as "one authorized by the consumer in advance of a transfer that will take place on a recurring basis, at substantially regular intervals, and will require no further action by the consumer to initiate the transfer." 12 C.F.R. Part 205, Supp. I, § 205.2(k), cmt. 1.

118.   Section 1693e(a) of the EFTA prohibits preauthorized electronic transfers without written authorization: "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a). Similarly, Regulation E provides: "Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R. § 205.10(b).

119.   Plaintiff and members of the Nationwide EFTA Class each maintained an "account" as that term is defined in 15 U.S.C § 1693a(2) and are "consumers" within the meaning of 15 U.S.C. § 1693a(5).

120.   Defendants uniformly and routinely initiated preauthorized electronic fund transfers and took money from the bank accounts of Plaintiff and members of the Nationwide EFTA Class without obtaining their written authorization for the transfers, as required by the EFTA and Regulation E. Defendants also uniformly and routinely failed to provide a copy of any such written authorization to Plaintiff and

the Nationwide EFTA Class members from whose bank accounts Defendants took preauthorized electronic fund transfers for purported fees or loan payments.

121.   On May 9, 2019, June 4, 2019 and July 2, 2019, Defendants debited $198.00 from Plaintiff's bank account in the name of "www.slfa.us." In none of these instances did Defendants obtain Plaintiff's written authorization, nor did Defendants provide Plaintiff with copies of any such written authorizations.

122.   The Official Staff Interpretation of Regulation E explains, "when a third-party payee," such as Defendants, "fails to obtain the authorization in writing or fails to give a copy to the consumer … it is the third-party payee that is in violation of the regulation." 12 C.F.R. Part 205, Supp. I, § 205.10(b), cmt. 2.

123.   As a direct and proximate result of Defendants' violations of the EFTA and Regulation E, Plaintiff has suffered damages in the amount of the unauthorized debits taken by Defendants. 15 U.S.C. § 1693m. As a further direct and proximate result of Defendants' violations of the EFTA and Regulation E, Plaintiff and the Nationwide EFTA Class members are entitled to recover statutory damages in the amount of "the lesser of $500,000 or 1 per centum of the net worth of the defendant." *Id*. § 1983m(a)(2)(B).

124.   Pursuant to 15 U.S.C. § 1693m, Plaintiff and the Nationwide EFTA Class are also entitled to recover costs of suit and attorneys' fees from Defendant.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all Class members proposed in this Complaint, respectfully request that the Court enter a judgment in their favor and against Defendants, as follows:

A. Determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and appointing them and their Counsel to represent the class;

B. Requiring Defendants bear the cost of Class notice;

C. Finding Defendants' conduct was unlawful as alleged herein;

D. Enjoining Defendants from engaging in the wrongful conduct complained of herein, and as to violations of the CLRA.  As to Plaintiff's CLRA claim, if Defendants fail to take the corrective action detailed in Plaintiff's CLRA letter within thirty days of the date of the letter, then Plaintiff will seek leave to amend her complaint to add a claim for damages under the CLRA;

E. Requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

F. Awarding Plaintiff and Class members actual damages, compensatory damages, punitive damages, statutory damages, and statutory penalties, in an amount to be determined;

G. Awarding Plaintiff and Class members costs of suit and attorneys' fees, as allowable by law; and,

H. Granting such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demand a trial by jury of all issues so triable.

DATED: September 16, 2021     Respectfully submitted,

*/s/ Ronald A. Marron*
Ronald A. Marron
**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
*ron@consumersadvocates.com*
ALEXIS M. WOOD
*alexis@consumersadvocates.com*
KAS L. GALLUCCI
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Attorney for Plaintiff and the Proposed Class***